IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KINGVISION PAY-PER-VIEW, | ) | Case No. 1:04CV1495 |
| CORP., LTD., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | |
| THIRTEEN THOUSAND LORAIN, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

This is a civil action brought under Title 47 U.S.C. § 605, the Communications Act of 1934. The plaintiff is KingVision Pay-Per-View Corp., Ltd. ("KingVision"), a Delaware corporation with its principal place of business in Deerfield Beach, Florida. The defendants are Thirteen Thousand Lorain, Inc., d/b/a the Cornerstone Cafe ("Cornerstone"), of 13000 Lorain Ave. in Cleveland, and Cornerstone's erstwhile owner, William McGivern ("McGivern").

The dispute arises from Cornerstone's alleged broadcast of a pay-per-view boxing match between Felix Trinidad and Bernard Hopkins on September 29, 2001. KingVision alleges that it possessed exclusive rights to license the viewing of this event to both individuals and commercial establishments, and that Cornerstone broadcast the event to its patrons without first obtaining the requisite license from KingVision. On July 30, 2004, KingVision filed a single-count complaint charging Cornerstone and McGivern with violation of Title 47 U.S.C. § 605 (Docket No. 1).

McGivern was served with a copy of the complaint on August 9, 2004 (see Docket No. 6), but

service was not accomplished on Cornerstone, which appears to have gone out of business (see Docket No. 4). Neither defendant filed an answer, and on April 18, 2005, the court granted KingVision's motion for default judgment in its favor (Docket Nos. 9 & 10). On July 8, 2005, the court conducted a hearing to determine the appropriate amount of damages due KingVision. Defendants did not appear at this hearing.

As KingVision did not present any additional evidence regarding service at the July 8 hearing, the court must conclude that service was not accomplished on Cornerstone as an entity, and thus that the court lacks jurisdiction to assess any damages against Cornerstone. *See Yox v. Durgan*, 298 F. Supp. 1365 (E.D. Tenn. 1969).

Title 47 U.S.C. § 605(a) provides, in pertinent part:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Subsection (d) of the same Act creates a private right of action for anyone aggrieved by a violation of subsection (a), including "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." Damages available to one who successfully prosecutes such an action include:

> an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just ... [and] [i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the

award of damages ... by an amount of not more than $100,000.

*Id.* at § 605(e)(3)(C)(i) and (ii). The court may also award costs, including attorney's fees, to a prevailing party under § 605(e)(3)(B). However, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." *Id.*, at § 605(e)(3)(C)(iii).

In this case, KingVision contends that an assessment of maximum statutory damages is appropriate because of the difficulty in assessing the damage wreaked by Cornerstone's unjustified broadcast. Moreover, assessment of the maximum penalty would supposedly "punish the Defendants for the acts of theft" and ensure that KingVision and "similar distributors of protected communications" not be forced by such pirates to "curtail distribution of [their] programming."

However, in its complaint and supporting affidavits, KingVision asserts that only five patrons were reported at the Cornerstone on the date of the alleged piracy. Were KingVision to have assessed a fee to Cornerstone for the public exhibition and viewing of the Trinidad/Hopkins fight, said fee would have been either $75, or "$15.00 times the capacity of the establishment." (KingVision gives no explanation of its methods for determining which equation would have been used to set the license fee in Cornerstone's case, and provides no evidence regarding the capacity of the establishment.)

Numerous courts have granted less than the maximum statutory damages in similar cases. In *Buckeye Cablevision, Inc. v. Sledge*, 2004 U.S. Dist. LEXIS 7578 (N.D. Oh. 2004), Judge Carr of this court found the maximum award of $110,000 to be "excessive under the circumstances presented" and instead fined the defendant $2,500 plus interest, attorney's fees, and costs. Judge Carr explained the circumstances, which are similar to the facts in this case:

There is no evidence that the defendant repeatedly violated the law over an extended period of time. It is also unlikely that this defendant received a substantial monetary gain by receiving the plaintiff's satellite programming without its authorization. There is no evidence that the defendant attempted to profit from her illegal conduct. Absent competent evidence that would suggest that this defendant acted egregiously, a court should not award the highest possible damages.

*Id.* at *6.

In *Home Box Office v. Champs of New Haven*, 837 F.Supp. 840 (D. Ct. 1993)(cited by Judge Carr in the above case), the plaintiff sought the $250,000 maximum in statutory damages. The court (Cabranes, C.J.) found the maximum to be "demonstrably excessive under the circumstances presented," noting "[t]here are no allegations of repeated violations over an extended period of time, of substantial unlawful monetary gains by the defendants, or, conversely, of any significant actual damages to the plaintiff." *Id*. at 484. The court assessed $10,000 in damages for the defendant's receipt of unauthorized HBO signals.

*Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 U.S. Dist. LEXIS 10440 (S.D.N.Y. 2003) dealt with a default judgment granted to the plaintiff for the unauthorized broadcast of the same Trinidad/Hopkins fight at issue in this matter. In his Report and Recommendation, the Magistrate Judge listed the *Home Box Office* factors before rejecting KingVision's plea for maximum statutory damages. However, because he agreed with Kingvision that the affirmative steps necessary to intercept signals demonstrate some manner of willfulness, the Magistrate Judge proposed an award of $4,000 ($1,000 because no evidence on actual damages submitted, plus $1,000 for "deterrence," and $2,000 for willfulness) against each defendant.

In *Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42 (E.D. Pa. 1997), the court found the maximum damages requested by the provider of a 1995 Mike Tyson fight to be "unwarranted in the absence of evidence suggesting especially egregious circumstances." *Id*. at 44. Instead, the court exercised

its discretion to award $1,000 for the single violation plus an additional $1,000 for willfulness.

In *Time Warner Cable of New York City v. Googies Luncheonette*, 77 F.Supp.2d 485 (S.D.N.Y. 1999), the Magistrate Judge reviewed the approach taken by other courts and recommended a set sum of $50, to be multiplied by the number of patrons established to be viewing the match (in this case, $250). She then proposed adding a figure of three times this amount for purposes of deterrence (in this case, $750, for a total award of $1,000). In *Time Warner Cable of New York City v. Taco Rapido Restaurant*, 988 F.Supp. 107 (E.D.N.Y. 1997), Magistrate Judge Robert Levy employed this same $50-per-patron approach.

Finally, in *DirecTV, Inc. v. Albright*, 2003 U.S. Dist. LEXIS 23811 (E.D. Pa. 2003), the court entered a default judgment in plaintiff's favor, but rejected the plaintiff's request for maximum statutory damages, finding, as here, "no evidence in the record concerning the 'willfulness' of Defendant's conduct." *Id.* at *8. The court found the defendant's single violation of subsection (a) of the Communications Act "distinguishable from those cases where courts have looked to a defendant's willful and flagrant disregard of the law to justify a higher damage award," *id.* at *9, and exercised its discretion to award $1,000 plus fees and costs. Finally, the court noted that its $1,000 award "is proportionate to those imposed in other jurisdictions" for similar misconduct. *Id.* at *10, citing *Universal Sports Network, Inc. v. Jimenez*, 2002 U.S. Dist. LEXIS 17709 at *2 (N.D. Cal. Sept. 18, 2002) (awarding $ 1,000 for violation of § 605(a)); *Kingvision Pay-Per-View, Ltd. v. Langthorne*, 2001 U.S. Dist. LEXIS 20721 at *4 (D. Mass. 2001)(same); *Entertainment by J & J v. Perez*, 2000 U.S. Dist. LEXIS 9280 at *2 (N.D. Cal. 2000) (same); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1199 (N.D. Cal. 2000)(same).

-5-

This court finds that McGivern's single violation of subsection (a) of the Communications Act is likewise distinguishable from those cases where courts have looked to a defendant's willful and flagrant disregard of the law to justify a higher damage award. The court harbors continuing doubts regarding McGivern's direct role in producing the violation of the Act – and as noted, it lacks jurisdiction to impose any fine on Cornerstone as an entity. The court also doubts the applicability of a deterrence rationale in circumstances where the violator no longer possesses the means to attempt future violations (*i.e.*, ownership of a bar).

In keeping with these concerns, as well as  with the well-founded approach of both the *Albright* and the *Time Warner Cable* decisions, the court assesses an award of $1,000, plus attorney's fees, against McGivern.

KingVision has submitted affidavits demonstrating that the proper amount of attorney's fees is $1,950 (Docket Nos. 12 & 13). McGivern is therefore ordered to remit the total sum of $2,950.00 to KingVision. This order is final and appealable.

IT IS SO ORDERED.

_____/s/ Ann Aldrich_____
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated October 20, 2005**